484 P.2d 244

Charles KAUFMAN, Appellant,

v.

PIMA JUNIOR COLLEGE GOVERNING BOARD OF PIMA JUNIOR COLLEGE DISTRICT IN PIMA COUNTY, Arizona et al., Appellees.

No. 2 CA–CIV 910.

Court of Appeals of Arizona, Division 2.

May 4, 1971.

Rehearing Denied June 25, 1971.

Review Denied July 13, 1971.

**476**

---

Robertson & Fickett, P. C., by Gerard R. O'Meara, Tucson, for appellant.

Rose Silver, Pima County Atty., by Lawrence Ollason, Sp. Deputy County Atty., Tucson, for appellees.

HOWARD, Judge.

Appellant was hired by the governing board of Pima Junior College in early 1968 on the recommendation of Dr. Oliver Lane, the president of Pima Junior College at that time, for the fiscal year of 1968 through 1969, in the position of dean of administration of Pima Junior College. He was re-hired by the board for the fiscal year 1969 through 1970. The board also gave its tentative commitment for the fiscal year 1970 through 1971. No written contracts however, were issued to the appellant. Nevertheless, for the 1969 through 1970 fiscal year, appellant was given an annual salary of $20,000 and a $2,000 car allowance.

Appellant performed his duties without incident until September 16, 1969, at which time appellant received a letter from the Provost of Pima Junior College requesting him to submit his resignation. Appellant did not resign and did not leave the junior college until he was locked out of his office and his salary stopped.

On November 4, 1969, appellant filed a petition for writ of mandamus against appellees wherein he asked the court for the following relief: That the appellees be directed to reinstate him as dean of administration of Pima Junior College for the balance of the fiscal year of 1969 and 1970; that the board be directed to recognize the existence of petitioner's contract for the fiscal year 1970 through 1971; that the appellees be directed to issue a written statement of reasons for dismissal for the fiscal year 1970 through 1971 and upon timely demand give the appellant a hearing on such dismissal; that the appellees be directed to forthwith grant a written contract to the appellant covering the partially elapsed fiscal year of 1969 through 1970.

Appellant's petition was dismissed by the trial court. Appellant then filed an action for damages in the lower court and filed this appeal in the mandamus action.

Appellant claims that the lower court erred in refusing to issue a writ of mandamus because (1) appellees failed to comply with A.R.S. § 15–251 et seq., known as the Arizona Teachers Tenure Act, (2) appellees failed to comply with the tenure policy enacted by the State Board of Directors for Junior Colleges, and (3) under the "common law" appellant is entitled to a hearing prior to termination.

### ARIZONA TEACHERS TENURE ACT

■■■ The question first posed is whether or not appellant is covered by the Arizona Teachers Tenure Act. A.R.S. § 15–251 et seq., represents a general scheme by the legislature to insure tenure for certain teachers. In particular, tenure is assured a "continuing teacher" which is defined as a certified teacher who is employed, or a school principal devoting not less than 50% of his time to classroom teaching, or, a supervisor of school children's activities whose contract has been renewed for its fourth consecutive year of such employment in the district. A.R.S. § 15–251, sub-

sec. A, par. 2. The other type of teacher under the Act is the "probationary teacher" under A.R.S. § 15–251, subsec. A, par. 3 defined as a certified teacher who is employed under a contract by a school district as a full time classroom teacher, school principal devoting not less than 50% of time to his classroom teaching, or, supervisor of school children's activities, and who is not a continuing teacher. This teacher has no tenure but does have the benefit of automatic contract renewal under A.R.S. § 15–252. The record clearly demonstrates that the appellant was never hired in a teaching capacity of any kind, nor was he a school principal or a supervisor of school children's activities. For that reason alone, the Arizona Teachers Tenure Act does not apply to appellant. However, assuming arguendo, that he is a "probationary teacher" as appellant asserts, we find that the Act does not apply, in any event, to junior colleges organized, such as Pima Junior College under the State-County Junior College Program by virtue of A.R.S. § 15–651 et seq. The reason such junior colleges are not under the Teachers Tenure Act is that all of the provisions of such act requiring written notices and hearings as prerequisites of dismissal apply to only "school board" or the "superintendent." A.R.S. § 15–251, subsec. A, par. 4 defines school board as the board of trustees of an *elementary school district* or the board of education of a *high school district*, or a *county superintendent of schools* in the case of accommodation schools located in the county. A.R.S. § 15–251, subsec. A, par. 5 defines "superintendent" as the superintendent of schools of a school district. It is obvious that none of these definitions apply to the board of trustees of a county-state junior

college and therefore, the Teachers Tenure Act is inapplicable.[1]

Since the Teachers Tenure Act is not applicable in this situation the cases of Tempe Union High School District v. Hopkins, 76 Ariz. 228, 262 P.2d 387 (1953) and Board of Education, Tucson High School District No. 1 v. Williams, 1 Ariz.App. 389, 403 P.2d 324 (1965), cited by appellant are not in point.

## THE STATE BOARD'S POLICY OF STANDARDS ON TENURE

December 11, 1961, upon receiving the written opinion of the Attorney General to the effect that the present tenure law did not apply to junior college teachers in the state-county system, a member of the State Board of Directors for Junior Colleges, made a motion which was seconded and passed unanimously as follows:

"TENURE. A. The County Board of Governors shall establish and implement a policy which protects the staff members from unreasonable dismissal and the college from the necessity to retain incompetent teachers.

B. The policy shall employ such procedures as are found in continuing contracts laws; reasonable period of probation, early notification of contract renewal or termination, written statement of reasons for dismissal for both probationary and established faculty members, and *assurance of continuing equitable treatment and reasonable security after the probationary period.*" (Emphasis added)

The appellees first of all, claim that the State Board of Directors for Junior Colleges have no governing power over them and have no power to impose the

1. The Attorney General's letter opinion No. 62–4–L contains the following question and answer:
"Question: 1. Does the tenure law as defined in 15–251, A.R.S. as amended, and the remainder of Chapter 2, Article 3, apply to the state-county junior college program in Chapter 6.1, A.R.S.? * * * Conclusion: 1. No * * * It is our opinion that the tenure law as defined in 15–251, A.R.S., is not applicable to the junior college districts established pursuant to Chapter 6.1 of Title 15 of the Arizona Revised Statutes, for 15–251, subsec. A, par. 4 says: ' "School board" or "governing board" means the board of trustees of an *elementary school district* or the board of education of a *high school district*.' (Emphasis added)"

foregoing resolution upon them. We do not agree. A.R.S. § 15–660 provides that the State Board shall:

"1. Enact ordinances for the government of the institutions under its jurisdiction.

2. Set standards for the establishment, development, administration, operation and accreditation of junior colleges.

3. Permit and arrange for certification of experienced and qualified community leaders in business, the professions and the arts, for the purpose of teaching classes at a junior college in fields of their specific competence.

4. Establish qualifications of the instructional staff and establish standards of vocational competence required to instruct in occupational as well as academic subjects.

5. Fix tuitions and fees to be charged and graduate the tuitions and fees between institutions and between residents, nonresidents, and students from foreign countries.

6. Establish curriculums and designate courses at the several institutions which in its judgment will best serve the interests of the state.

7. Fix and collect fees for issuance and renewal of certificates as provided in paragraphs 3 and 4 of this section. All fees shall be deposited with the state treasurer in a special fund, designated the 'certification fund', to be used for the purpose of defraying the costs of certification. Added Laws 1960, Ch. 119, § 1, as amended Laws 1963, Ch. 13, § 1."

The above powers are broad enough to encompass the resolution on contract policy passed by the State Board.

■ The appellees next contend, that, in any event, A.R.S. § 15–679, subsec. A, par. 7 gives them the absolute power to discharge an employee without any reason whatsoever. We do not agree with this contention either. That section provides that the district board shall have the power to "remove any officer or employee when in its judgment the interests of education in the state so require." Thus, the district board is given the authority to use and exercise its *judgment*. The exercise of judgment means the exercise of sound discretion, that is, discretion exercised, not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law. United States v. Beckman, 104 F.2d 260, 262 (3rd Cir. 1939).

■ We believe that the resolution passed by the State Board is compatible with A.R.S. § 15–679, subsec. A, par. 7.

■ Petitioner complains that the appellees failed to give him a hearing concerning his dismissal and further failed to provide him with written reasons for his dismissal. In his mandamus action he requests that the court order appellees to act in these respects. It is our opinion that appellant is premature in asking the court for such relief. A writ of mandamus can only be issued to compel the performance of a ministerial duty. City of Phoenix v. Superior Court, 6 Ariz.App. 327, 432 P.2d 471 (1967). We have searched and have been unable to find in the record that appellant requested the appellees to provide him with a hearing concerning his discharge. The appellant must exhaust his administrative remedies prior to seeking judicial review of an administrative act. City of Phoenix v. Superior Court, supra. It is further the rule that a person seeking a mandamus must first demand a performance of the act or duty which he seeks to enforce. 55 C.J.S. Mandamus § 32, at 60. We believe that there is inherently established in the guidelines set forth in the state board's policy of standards on tenure the right to a hearing before the junior college board. However, we do not believe that such a hearing is automatic. It must be requested. To paraphrase our Supreme Court in Hutchins v. Frohmiller, 55 Ariz. 522, 103 P.2d 956 (1940): How can it be claimed that the appellees refused to give a hearing when he never requested a hearing?

As for the failure to give written reasons for his discharge, Mr. Michael Harris who

was chairman of the junior college board at the time, testified to a conversation with Mr. Kaufman wherein he testified that the reasons for discharge were communicated to appellant by himself and in the presence of the Provost of the school, Dr. Harper. It is our opinion, under the facts of this case, that the appellant should have requested the appellees for written reasons prior to filing an action for mandamus in Superior Court.

## A PRIOR HEARING AND THE "COMMON LAW"

Appellant cites the following cases for the proposition that he is entitled to a hearing prior to termination of his contract: Johnson v. Board of Education, 101 Ariz. 268, 419 P.2d 52 (1966); Anthony v. Phoenix Union High School District, 55 Ariz. 265, 100 P.2d 988 (1940); Public School District No. 11 v. Holson, 31 Ariz. 291, 252 P. 509 (1927). These cases apply to teachers. Appellant was not a teacher and the cited cases are inapplicable.

Affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.